AO 245H (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page     4     of     7

DEFENDANT: TROY ANTHONY SMOCKS  aka KENNETH HARF
CASE NUMBER:  21-198 (TSC)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (Rev. 02/20)   Judgment in a Criminal Case
                        Sheet 3B — Supervised Release

Judgment—Page   5   of   7

DEFENDANT:   TROY ANTHONY SMOCKS  aka KENNETH HARF
CASE NUMBER:  21-198 (TSC)

## ADDITIONAL SUPERVISED RELEASE TERMS

1.  To ensure compliance with the computer monitoring condition, the defendant must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. The defendant must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

The Probation Office shall release the presentence investigation report to all appropriate agencies, which includes the United States Probation Office in the approved district of residence, in order to execute the sentence of the Court. Treatment agencies shall return the presentence report to the Probation Office upon the defendant's completion or termination from treatment.

AO 245J (Rev. 09/19)   Sheet 5 — Criminal Monetary Penalties

Case 1:21-cr-00198-TSC   Document 67   Filed 12/03/21   Page 6 of 7

Judgment — Page 6 of 7

DEFENDANT: TROY ANTHONY SMOCKS aka KENNETH HARF
CASE NUMBER: 21-198 (TSC)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ | $ | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

  ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:  TROY ANTHONY SMOCKS  aka KENNETH HARR
CASE NUMBER:  21-198 (TSC)

Judgment — Page 7 of 7

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $   100.00          due immediately, balance due

    ☐  not later than                        , or
    ☐  in accordance with  ☐  C,   ☐  D,   ☐  E, or   ☐  F below; or

B  ☐  Payment to begin immediately (may be combined with      ☐ C,      ☐ D, or    ☐ F below); or

C  ☐  Payment in equal                    (e.g., weekly, monthly, quarterly) installments of $          over a period of
                     (e.g., months or years), to commence              (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal                    (e.g., weekly, monthly, quarterly) installments of $          over a period of
                     (e.g., months or years), to commence              (e.g., 30 or 60 days) after release from imprisonment to a
       term of supervision; or

E  ☐  Payment during the term of supervised release will commence within              (e.g., 30 or 60 days) after release from
       imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:

       The financial obligations are immediately payable to the Clerk of the Court for the US District Court, 333
       Constitution Ave NW, Washington, DC 20001. Within 30 days of any change of address, the defendant shall notify
       the Clerk of the Court of the change until such time as the financial obligation is paid.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate
Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

   Case Number
   Defendant and Co-Defendant Names
   (including defendant number)                 Total Amount            Joint and Several        Corresponding Payee,
                                                                         Amount                   if appropriate

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment,
(5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of
prosecution and court costs.

≡ P PARLER

colonel007



ColonelTPerez (Ret)
@Colonel007

Today, January 6, 2021, We Patriots by the millions, have arrived in Washington, D.C., carrying banners of support for the greatest President the world has ever known.

Bit if We must...

Many of Us will return on January 19, 2021, carrying Our weapons, in support of Our nation's resolve, towhich the world will never forget!!!

We will come in numbers that no standing army or police agency can match. However, the police are NOT Our enemy, unless they choose to be!

All who will not stand with the American Patriots... or who cannot stand with Us, then, that would be a good time for YOU to take a few vacation days.

The American Patriot


PETITIONER'S
EXHIBIT

District of Columbia )
                     ) SS.
Washington           )

## Sworn Declaration

On January 6, 2021, and in Washington, D.C., at approx-imately 09:00 AM. EST, I walked back to my hotel in effort to put on more layers of clothing because it was very cold on the grounds of Elisp that morning where President Donald Trump, was holding his "Stop The Steal" rally.

While returning to the hotel, I encountered four African American, uniformed District of Columbia Police Officers who were standing at a baracaded street intersection. Each officer wore winter type face mask, but I could tell that there were three males and one female. I witnessed one of the male officers say, "Morris, did you get that shit from Capitol Police?-- Talking about the mission change -- Now, we ain't suppose to fuck up the Trump supporters -- We only suppose to fuck up the anti-Trump supportes -- What the fuck is that suppose to mean? -- How we gonna know the difference?" The female officer then responded, "when they call me and I put all that shit on, I'm gonna go over there and fuck all of them up. -- If they bring their dumb white asses over to that Capitol, -- I'm fucking them up".

I declare under penalty of perjury 28 v.s.c. See 1746(2), that the foregoing is true and correct. Executed on 27 March 2021,

x _____

PETITIONER'S
EXHIBIT
2



**ColonelTPerez (Ret)** · Dec 30 · 🌐 T\*
@ColonelOO7

Today Eric Trump said that he would physically fight with the Patriots to save Our country. Today Representative Mo Brooks, asked the Patriots to pledge Our live and wealth to fight for Our country. And today President Trump told Us to "fight like hell". He said that Our cause was a matter of national security, and that these people behind the massive fraud must be arrested and brought to justice. And that task, falls on the shoulders of We The People.... the American Patriots.

So over the next 24 hours, I would say, lets get our personal affairs in order. Prepare Our weapons, and then go get em . Lets hunt these cowards down like the Traitors that each of them are. This includes, RINOS, Dems, and Tech Execs. We now have the green light. [All] who resist Us, are enemies of Our Constitution, and must be treated as such.

Today, the cowards ran as We took the Capital. They have it back now, only because We left. It wasn't the building that We wanted... it was them!
. .



PETITIONER'S
EXHIBIT
3

Case 4:21-mj-00033-KPJ *SEALED*   Document 1-1   Filed 01/14/21   Page 1 of 5 PageID #:  6

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | |
|---|---|
| United States of America<br>v.<br>Troy Anthony Smocks<br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>) | Case: 1:21-mj-00058<br>Assigned to: Judge Robin M. Meriweather<br>Assign Date: 1/14/2021<br>Description: COMPLAINT W/ARREST WARRANT |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 6-7 2021 _____ in the county of _____ in the _____ District of _____ Columbia _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 875(c) | Threats in Interstate Commerce |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jeff Janczyk, Metropolitan Police Department
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**Telephone** _____ (specify reliable electronic means).

Date: _____ 01/14/2021 _____

_____
Robin M. Meriweather
2021.01.14 14:34:20 -05'00'
*Judge's signature*

City and state: _____ Washington, DC _____

Robin M. Meriweather, U.S. Magistrate Judge
*Printed name and title*

PETITIONER'S
EXHIBIT
4

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Eastern District of Texas

FILED: 1/14/21
U.S. DISTRICT COURT
EASTERN DISTRICT COURT
DAVID A. O'TOOLE, CLERK

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*
The SUBJECT PREMISES located at 6606
Mapleshade Lane, Apartment 20A, Dallas, Texas
75252, as more fully described in Attachment A

)
)
)
)
)

Case No. 4:21-MJ-028

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

The SUBJECT PREMISES located at 6606 Mapleshade Lane, Apartment 20A, Dallas, Texas 75252, as more fully described in Attachment A and incorporated herein by reference.

located in the _____ Eastern _____ District of _____ Texas _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2101, 875(c), 371 and 372 | Travel with intent to riot; Threat to kidnap or injure; Conspiracy to commit offense or to defraud United States; and Conspiracy to impede Officer. |

The application is based on these facts:

See Attached Affidavit of SA Kendrick Chumak, Federal Bureau of Investigation, which is attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent, Kendrick J. Chumak, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41(d)(3) by reliable electronic means:

Date and time issued:  01/14/2021

City and state:  Plano, TX

*Judge's signature*

Kimberly C. Priest Johnson, U.S. Magistrate Judge
*Printed name and title*

PETITIONER'S
EXHIBIT
5

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on November 13, 2020**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | MAGISTRATE NO. 1:21-mj-00058 |
| | : | |
| | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S. Code § 875(c) |
| TROY ANTHONY SMOCKS, | : | (Threats in Interstate Communications) |
| | : | |
| Defendant. | : | |
| | : | |

### INDICTMENT

The Grand Jury charges that:

### COUNT ONE

On or about January 6, 2021, within the District of Columbia, the defendant, Troy Anthony Smocks, knowingly and willfully did transmit in interstate and foreign commerce a communication using a social media service, and the communication contained a threat to kidnap and injure law enforcement officers, specifically:

> Many of Us will return on January 19, 2021, carrying Our weapons in support of Our nation's resolve, towhich [sic] the world will never forget!!! We will come in numbers that no standing army or police agency can match. However, the police are NOT Our enemy, unless they choose to be! All who will not stand with the American Patriots . . . or who cannot stand with Us . . . then, that would be a good time for YOU to take a few vacation days.


PETITIONER'S EXHIBIT

6

All in violation of Section 875(c) of Title 18 of the United States Code.

**(Threats in Interstate Communications**, in violation of Title 18, United States Code, Section 875(c))

## COUNT TWO

On or about January 7, 2021, within the District of Columbia, the defendant, Troy Anthony Smocks, knowingly and willfully did transmit in interstate and foreign commerce a communication using a social media service, and the communication contained a threat to kidnap and injure politicians and executives in the technology industry, specifically:

> So over the next 24 hours, I would say, lets [sic] get our personal affairs in order.  Prepare Our weapons, and then go get 'em.  Lets [sic] hunt these cowards down like the Traitors that each of them are.  This includes, RINOS, Dems, and Tech Execs.  We now have the green light.  [All] who resist Us, are enemies of the Constitution, and must be treated as such.  Today, the cowards ran as We took the Capital.  They have it back now, only because We left.  It wasn't the building that We wanted . . . it was them!

All in violation of Section 875(c) of Title 18 of the United States Code.

**(Threats in Interstate Communications**, in violation of Title 18, United States Code, Section 875(c))

A TRUE BILL:

FOREPERSON.

*Channing D. Phillips* /SM/

Attorney of the United States in
and for the District of Columbia

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,        )
                                 )
v.                               )
                                 )
                                 )   CRIM NO. 21-CR-198-TSC
TROY ANTHONY SMOCKS,             )   Judge: Chutkan
                                 )
          Defendant.             )

## MOTION TO RECONSIDER THE
## MOTION FOR LEAVE TO FILE DOCUMENT AND REOPEN HEARING
## ON THE MOTION TO DISMISS
## FOR VIOLATION OF THE SPEEDY TRIAL ACT

COMES NOW Troy Anthony Smocks, by and through counsel, and moves

for the court to respectfully reconsider its ruling on defendant's Motion for Leave

to File Document and Reopen Hearing on the Motion to Dismiss for Violation of

the Speedy Trial Act (Dkt. 30). As reasons therefor, defendant states as follows:

### Procedural History

1.    On January 14, 2021, the government filed a complaint in this matter.

The complaint charged Mr. Smocks with Threats in Interstate Commerce, in

violation of 18 U.S.C. § 875(c).

2.    Mr. Smocks was arrested on January 15, 2021.

3.    On March 9, 2021, Mr. Smocks was indicted in this matter. In the

Indictment, Mr. Smocks is charged with two counts of Threats in Interstate

1



Communication, in violation of 18 U.S.C. §875(c). (Dkt. 8) Each count carries a maximum penalty of five years and/or a fine.

4.      On March 18, 2021, undersigned counsel entered his appearance under the Criminal Justice Act to represent Mr. Smocks.

5.      On March 29, 2021, Mr. Smocks, through counsel, filed its Motion to Dismiss for Violation of the Speedy Trial Act Violations (hereinafter "Motion to Dismiss"). (Dkt. 16) The motion was amended without objection on April 4, 2021, to fix some non-substantive, typographical errors. (Dkt. 19) In the Motion to Dismiss, Mr. Smocks sought to dismiss the indictment due to the violation of his speedy trial rights. Mr. Smocks incorporates the arguments made in the Motion to Dismiss herein.

6.      On April 12, 2021, the government filed its Opposition to the Motion to Dismiss (hereinafter "Opposition") (Dkt. 21).

7.      On April 13, 2021, the defense filed a Reply to the government's Opposition (Dkt. 25). As part of the Reply, the defense insisted that the government should provide proof of its allegations for reasons for Mr. Smocks delays in transport, rather than relying on hearsay representations or proffers by the government or its witnesses. This included the government's assertion regarding the weather cancellation of the February 17, 2021, flight, as well as the medical

condition that caused Mr. Smocks to be excluded from the March 8, 2021, flight.

8.      On May 14, 2021, this Honorable Court held a hearing on the Motion to Dismiss. Arguments were made by both parties. No witness testimony or additional evidence was provided at that time by either party, including no further documentary or witness support of the reasons for the delay in transporting Mr. Smocks. The court took the oral arguments by the parties under advisement and indicated it would be issuing a ruling from chambers.

9.      On May 7, 2021, prior to the court's ruling on the Motion to Dismiss, Mr. Smocks filed a Motion for Leave to File Documents and Reopen Hearing on the Motion to Dismiss (hereinafter "Motion for Leave"). (Dkt. 30) As part of its Motion for Leave, Mr. Smocks, *inter alia*, requested the opportunity to both submit additional documentation in support of its Motion to Dismiss and the defense's request, and to have the Motion to Dismiss hearing reopened to present further evidence and make further argument. The two primary arguments that were made in the Motion for Leave were that certain reasons for delay in Mr. Smocks' transport from Texas to the District of Columbia. namely a medical diagnosis received during the Grady County Jail, as well as weather conditions that caused delay, were of a questionable nature. Exhibits discussing the weather conditions which provided more detail of the weather conditions that more accurately

3

conveyed the weather conditions that could have had some effect on the transport of Mr. Smocks were provided as Exhibits. Mr. Smocks also sought the desire to supplement the record with the addition of medical records from Grady County and or the District of Columbia Department of Corrections that had not been received at the time the Motion for Leave was filed. Mr. Smocks incorporates the Motion for Leave and its Exhibits by reference herein.

10.     Also on May 7, 2021, the court issued an Order Denying the Motion to Dismiss. (Dkt. 32) A nine-page Memorandum Opinion detailing the reasons for the denial of the Motion to Dismiss was also filed. (Dkt. 33) The Court based its ruling upon having calculated (19) nineteen excludable days against the Speedy Trial Act's time calendar.

11.     On May 11, 2021, the court took the Motion for Leave under advisement and stayed further briefing of those orders until further order of the court.

12.     On July 2, 2021, the court denied the Motion for Leave, and the court also simultaneously denied the request for a hearing. The court ruled in part due to the fact that no additional evidence had been submitted that would alter the findings of the Motion to Dismiss, thus making the motion futile.

4

## Argument

While the court has issued its ruling on both the original Motion to Dismiss and the Motion for Leave, Mr. Smocks respectfully requests that this court reconsider its ruling on these Motions. This motion is brought considering Rule 51(b), which states that "A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. Pro. 51(b). Mr. Smocks further states that the error is plain error, and therefore it is an "error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. Pro. 51(b). Furthermore, failure of a district judge to adhere to the statutory mandates of 18 U.S.C. 3161(h)(7)(A), to the Speedy Trial Act, is not "harmless error" because it means that the judge would have applied the incorrect legal standard in resolving excludable or non-excludable days under the Act's mandate. *See* Zender v. United States, 547 U.S. 489, 508-09 (2006).

In addition, Mr. Smocks requests that this court consider this motion as a Motion for Reconsideration of the court's ruling on the Motion for Leave, as it is being filed within ten days of the original court ruling. See, e.g., United States v.

5

Healy, 376 U.S. 75 (1964).

As argued in previous motions, Mr. Smocks has insisted that his rights under the Speedy Trial Act have been violated. However, in further consideration by this court, based upon the arguments and case law presented below, it is apparent that certain statutory provisions and cases related to the Speedy Trial Act were not sufficiently taken into consideration. Because these arguments were not presented for the court's consideration, either by Mr. Smocks' primary arguments or by the government presenting their obligations under case law or statue, which the government should have been done in good faith, Mr. Smocks respectfully presents these arguments for the court's consideration at this time and requests the court to reconsider its ruling and dismiss this case for violation of the Speedy Trial Act.

A.     **Violation of 18 U.S.C. § 3161(h)(7)(A)**

The Speedy Trial Act, under 18 U.S.C. § 3161(h)(7)(A), allows for the following:

> (h)The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
> (7) (A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of

6

delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

### 1.  No "ends of justice" determination was ever made

It is clear in the record that the government never made a request for a continuance any time between the time Mr. Smocks was arrested and the time the indictment was obtained. Neither, of course, did the defense ask for a continuance, nor did the court issue a *sua sponte* continuance. Instead, the government has arrived at the late hour after a Motion to Dismiss based upon Speedy Trial Act violations is filed, failed to point out that they did not comply with the statute and, instead have provided excuses based upon hearsay statements presented via affidavit. Given the established case law, respectfully, the court should reconsider its decision and should eventually dismiss Mr. Smocks matter due to the violation of the Speedy Trial Act.

On April 12, 2021, in its Memorandum in Opposition to Motion to Dismiss (Dkt. 20) (hereinafter "Memorandum"), the government ignored the requirements of 3161(h)(7)(A) and rather made its case by arguing that under 3161(h)(1)(F), there should be the retroactive exclusion of days for inclement weather, and the

7

alleged illness of Mr. Smocks, while at all times being aware that the relevant periods of delay, could only be lawfully excluded after first obtaining an "ends of justice" continuance under the provisions of 3161(h)(7)(A), which had never been granted by a judge, nor did they request for the court to do so.

The Speedy Trial Act, under 18 U.S.C. § 3161(h)(7)(A), permits the exclusion of time "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The government, at no time, made such a request, nor did they disclose to the court or the parties that such a request was required under the law but never made. Accordingly, in this case, the court has never been asked, nor has it concluded, that the "ends of justice" allow for exclusion of time.[1]

The government cannot claim ignorance as to the requirement of 3161(h)(7)(A) and the "ends of justice" requirement. Such a requirement is

---

1 In its legislative history, Congress made clear that the purpose of the Speedy Trial Act was to protect defendants like Mr. Smocks from delays caused by a behemoth system. *See* United States v. Salzmann, 417 F.Supp. 1139 (E.D. N.Y. 1976) ("In its discussion of its rejection of calendar congestion and unobtained witnesses as excuses for delay, the House Report on the bill eventually passed as the Speedy Trial Act noted the hard line it was taking against what it termed "institutional delay." It reasoned that. . . the nature of the concept of speedy trial is one which recognizes that institutional delays occasioned by poor administration and management can work to the detriment of the accused. Placing a prohibition on the granting of continuances for these reasons serves as an incentive to the courts and the Government to effectively utilize manpower and resources so that defendants may be tried within the time limits provided by the bill.  H.R.Rep.No.1508, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Admin.News pp. 7401, 7426. See Steinberg, Right to Speedy Trial: The Constitutional Right and Its Applicability to the Speedy Trial Act of 1974, 66 J.Crim.L. & Criminology 229, 235 (1975).")

mentioned in a case the government cited in its Opposition, namely Bloate v. United States, 559 U.S. 196 (2010). In *Bloate*, the Supreme Court also determined that delays in excess of the automatically excludable periods under 3161(h)(1) of the Speedy Trial Act, can only be excluded if a judge makes case specific findings under the 'ends of justice' continuance provisions to 3161(h)(7)(A). *Bloate* at 1356.

Accordingly, despite the government's presumable knowledge of its obligation, this Honorable Court never had the opportunity to issue any "ends of justice" finding based upon a motion filed by the government. Instead, the government has made *post hoc* arguments for its justifications as to why certain days should have been excluded. This procedure is not permitted under the Speedy Trial Act. Therefore, this court should revisit its decision and reopen its hearing as well as reconsider its decision on the Motion to Dismiss.

Furthermore, because of the actions (or rather, inactions) of the government's requests for continuance due to the "ends of justice" requirement, it is now seeking retroactive action by the court. This however is not permitted. *See* United States v. Carraquillo, 667 F.2d 382 (3rd Cir. 1981) (..."A district judge cannot wipe out violations of the Speedy Trial Act, after they have occurred by making the findings that would have justified granting an excludable delay continuance before the delay occurred.") *Carrasquillo* at 386. *See also* United States v. Brooks, 697 F.2d

517 (3rd Cir. 1982) ("...a judge could not grant an 'ends of justice' continuance

nunc pro tunc, providing after the fact justification for unauthorized delays.

Rather...the district judge must consider the matter at the outset and determine

whether the 'ends of justice' require that the trial be postponed.") *Brooks* at 552.

In conclusion, by having the government requesting "ends of justice"

findings after the fact is simply not allowed. If this Honorable court could forgive

an extended quote from United States v. Janik, 723 F.2d 537 (7th Cir. 1983), a clear

explanation, with internal citations, explains why the government's request fails:

> Against all this the government argues that otherwise nonexcludable
> time may be excluded if "the ends of justice ... outweigh the best
> interest of the public and the defendant in a speedy trial." The problem
> is that this language comes as we have seen from the section of the
> Act that allows exclusion of "Any period of delay resulting from a
> continuance granted by any judge on his own motion or at the request
> of" either party "if the judge granted such continuance on the basis of
> his findings that the ends of justice served by taking such action
> outweigh the best interest of the public and the defendant in a speedy
> trial." 18 U.S.C. Sec. 3161(h)(8)(A). There must be "action" taken by
> the judge, namely a continuance, based on findings made by the
> judge. The judge in this case never granted a continuance to give
> herself more time to dispose of Janik's motion. She did, when she
> refused to dismiss the indictment, make findings that the ends of
> justice had warranted the delays, and we have already said that the
> findings required by the Act may be entered after the continuance is
> granted. **But the continuance itself must be granted before the**
> **period sought to be excluded begins to run**. Since **the Act does not**
> **provide for retroactive continuances**, United States v. Carlone, 666
> F.2d 1112 (7th Cir.1981), "a judge could not grant an 'ends of justice'
> continuance nunc pro tunc, providing after the fact justification for
> unauthorized delays. Rather, ... the district judge must consider the

matter at the outset and determine whether the 'ends of justice' require that the trial be postponed." United States v. Brooks, [697 F.2d 517, 522]. See United States v. Carrasquillo, 667 F.2d 382, 386 (3d Cir.1981). A district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable-delay continuance before the delay occurred. *Janik* at 545.

Accordingly, because the government failed to make its request to continue the matter pursuant to the ends of justice, this matter should be dismissed. Further, since the government failed to 1) represent to the court that it had this obligation in its pleadings; 2) fail to make the request in violation of its obligations; and 3) argue in its opposition for time exclusions in circumvention of the law and in violation of Mr. Smocks' rights (despite citing cases that speak of this requirement), the court should consider government's Opposition to have argument in bad faith. Thus, for these reasons and for additional reasons argued in this pleading and in prior pleadings, Mr. Smocks' matter should be dismissed with prejudice.

## 2.    Exclusions based on Weather from February 12-20, 2021

In its opinion, this Honorable Court determined that the dates due to weather delay caused in the Oklahoma City area, from February 12 to February 20, 2021, were properly excluded under 18 U.S.C. § 3161(h)(1)(F). "The court therefore agrees with the Government that a nine-day delay in transporting Smocks due to

the extreme winter weather in mid-February was reasonable." May 10, 2021,
Memorandum Opinion at 8. However, such a conclusion of excluding those nine
days is not permitted. In the U.S. Supreme Court opinion of <u>United States v.
Tinklenberg</u>, 563 U.S. 647 (2011), the Court held that it is not appropriate to
include weekend days or holidays. *See Tinklenberg* at 661-62. ("The Sixth Circuit
exempted weekend days and holidays because it believed that Subparagraph (F)
incorporated F.R.Crim.P. 45(a).... But in our view Subparagraph (F) does not
incorporated Rule 45.... We believe the better reading of Subparagraph (F) would
include weekend days and holidays in its 10-day time period.") Accordingly,
pursuant to *Tinklenberg*, this court should not have excluded four days between
February 12 and 20: a) Saturday, February 13, 2021; b) Sunday, February 14,
2021; c) Monday, February 15 (President's Day); and Saturday, February 20, 2021.

Furthermore, in its Memorandum Opinion of July 2, 2021, this Honorable
Court opined that based upon evidence provided by way of reports from Will
Rogers World Airport ("WRWA"), which were provided as attachments to the
Motion for Leave, the court indicated that the reports showed only delay issues
from July 14-17, 2021. Memorandum Opinion of July 2, 2021, at 3-4. ("As
reported by WRWA, a significant portion of flights were cancelled during, at a
minimum, the period of February 14 through February 17, or four days.') The

12

court eventually determined that due to the fact this would create 29 days, making

it one day short of the 30-day statutory cap, and thus making the Motion for Leave

"futile." *Id.* at 5. However, as indicated previously, both February 14 and 15, 2021

cannot be excluded under *Tinklenberg*. Accordingly, solely on this issue, that

would put the count at 31 days, which would put the government over the cap and

thus this court is obligated under the statute to dismiss the case.

Regarding the government's actions in its argument, the government's

arguments indicate bad faith on their part. First, the defense would note that the

government sought to exclude all the time from February 12 to 20, 2021, without

proffering **any** information about what flights were and were not cancelled during

this time. Furthermore, the government sought to exclude multiple days they knew,

or should have known, based upon *Tinklenberg*, a Supreme Court case decided in

2011 were not permitted to be excluded under the Speedy Trial Act. Federal

prosecutors like everyone else are presumed to know the law. United States v.

Barker, 514 F. 2d 208 (D.C. Cir 1975).

In addition, the court may want to consider that there may be an issue with

the government's witness representations via affidavit that, at best, should require

more substantive proof other than the hearsay representation. In the government's

Opposition, the government represented that "the state of Oklahoma (where the

defendant was located) entered a winter weather State of Emergency beginning on February 12, 2021."). Opposition at 13. However, in the government's Memorandum, the government represented to the Court that "[t]he winter storm caused the cancellation of numerous JPATS flights, including a February 17, 2021, flight that the defendant was available to take. And the cancellations caused a subsequent backlog, creating further delay." Opposition at 14.   Accordingly, the government's proffers are highly suspect for two reasons. First, the government represents, not that Mr. Smocks, was actually "scheduled" to take the February 17, 2021, flight as was reported on Page 8 of the Opposition regarding the February 8, 2021, flight, but only that Mr. Smocks was "available" to take the flight. Secondly, without supporting evidence, the government's representation about the winter storm causing "the cancellation" of the February 17, 2021, flight can be taken in bad faith where it appears to be in direct conflict with the (WRWA) Will Rogers World Airport, Winter Storm Update, for February 17, 2021, previously submitted to the Court as the Motion for Leave, Exh. 5. That update stated that: "6:30 AM, 2/17/2021 - Airport Updates / Conditions: Crews worked throughout the night to maintain the airfield, airport roadways, sidewalks, and employee parking facilities. [The airfield is operational this morning]. Operations employees of the airport, tasked with checking the safety and conditions on the airfield, are reporting that

14

crews may need to occasionally close the runway and associated taxiways to broom off snow flurries that are still falling. **Aside from those occasional closures, the airfield should be ready for flights to resume today**." (Emphasis added). It should be noted that the government presented no such evidence of an actual February 17, 2021, cancelled flight, nor did the government obtain an 'ends of justice' continuance under 3161(h)(7)(A)(B)(i), for transportation problems with inclement weather. Because of the inconsistencies with the government's proffer and its conflict with the airport website itself, undoubtedly a neutral party in this matter, it becomes reasonable to question the validity and good faith of the government's Proffer.

Finally, it is worth noting that the government's delay in getting the indictment was in no way related to getting Mr. Smocks to the District of Columbia. At the hearing on May 14, 2021, the Court asked the government on at least three occasions for the reasons there was a delay in getting the indictment, aside from the transportation issues. However, the government gave no reason, but continued to justify its transportation excuses. In a case that similarly mirrors that of Mr. Smocks' in some ways, United States v. Cruz-Rivera, No. 1:20-cr-00245-JPH-TAB-01 (S.D. Ind. 2021) the court relevantly stated:

> The government has not shown that the delay in bringing the indictment "result[ed] from transportation" of Mr. Cruz-Rivera. See

15

> 18 U.S.C. § 3161(h)(1)(F). The government devotes most of its
> response to explaining why there was a delay in transporting Mr.
> Cruz-Rivera from Florida to Indiana. But the government has not
> explained why, as a threshold matter, it could not have pursued an
> indictment in Mr. Cruz-Rivera's absence.... In short, the government
> has not shown a nexus between the delay in transporting Mr. Cruz-
> Rivera and the delay in bringing the indictment against him, so the
> transportation exclusion under Section 3161(h)(1)(F) of the Speedy
> Trial Act does not apply. Cruz-Rivera at 4 (citations omitted)

Indeed, given the lack of explanation as to why there was a delay in getting

the argument, this court may consider not providing the transportation exclusion

under § 3161(h)(1)(F). Should the court do so, it would clearly have more days

than are necessary that are not excluded to find a Speedy Trial Act violation. Mr.

Smocks would respectfully request that the court do so and, for this and other

reasons presented, should dismiss the matter.

15. SEE ALSO - UNITED STATES v. HERNANDEZ-AMPARAN, 600 F. Supp. 2d 839 (W.D. Tex. 2009) (..."the government had numerous opportunities to seek a continuance when the delay in defendant's trial approached and then exceeded seventy days. SEE - 18 U.S.C. 3161(h)(7)(A). However, the government did not seek a continuance, and did not explain its failure to do so. These circumstances demonstrate that defendant's rights were violated through no fault of his own, and with no explanation from the government, supporting a dismissal with prejudice.") Id at 844.

### 3. Medical Diagnosis Issues

In its May 10, 2021, Memorandum Opinion, this Honorable Court excluded

three days, specifically March 7 to March 9, 2021, as part of the Speedy Trial Act

16

calculation. As argued previously, Mr. Smocks asserts that the reason for his exclusion from travelling was based upon a made-up diagnosis. As reasons for this conclusion, the defense has obtained the records from the Grady County Jail, a copy of which is attached hereto as Exhibit A. While the government has proceeded with hearsay evidence from Kevin Wykert, these records provide some concern about the accuracy of the hearsay that was presented by Agent Wykert. Specifically, there are many discrepancies that put into question the legitimacy of the claims made in the facility. Some, but not all the concerns, include the following: 1) On the alleged recording of the COVID testing results, there seems to be a change of a date that occurred on the collection data, which appears to have been change from a date of 3/7/21 at 1600 hours to 3/6/21 (Exh. 1 at 18); 2) the (new) date seems to indicate that the results were obtained 11 hours later (from 3/6/21, 1600 hours to 3/7/21, 0300, or 3:00 a.m. in the morning) which seems like a very odd time to review results (Exh. 1 at 18); 3) there somehow was a need for an 11-hour delay on getting results, when the results that were obtained when Mr. Smocks arrived were obtained in 20 minutes (January 29, from 1040 to 1100) (Exh. 1 at 15); 4) Neither "Prison in Transit Medical Summary" forms that indicate a positive COVID test are signed by a doctor and include a date of June 19, 2021 (Exh. 1 at 4-5); 5) The sheet that is supposed to show the medication that Mr.

17

Smocks presumedly would receive due to COVID is entirely blank not providing any indication of Mr. Smocks actually receiving medication (Exh. 1 at 6); 6) None of the documents that require signatures from Troy Smocks are actually signed by Troy Smocks, and there is no indication or procedures taken to show that the patient refused signature (Exh 1 at 7-12, 16, 20); 7) There is independent medical documentation showing a negative COVID test from Mr. Smocks arrival in January, but no such documentation exists for the alleged positive test that disallowed Mr. Smocks from traveling (Exh. 1 at 14). In short, there are many documents which appear to be of questionable creation and create issues as to whether these documents were made concurrently with accurate information,

Furthermore, there is an additional issue of his COVID-19 results when he arrived at the District of Columbia Department of Corrections. A copy of Mr. Smocks' medical records from the D.C. Department of Corrections are attached hereto as Exhibit B. In those records, it reports that on March 25, 2021, three weeks from the time of his alleged positive COVID test, Mr. Smocks' Rapid COVID-19 PCR (molecular) test was negative. This would further support the theory that Mr. Smocks never was positive for COVID, as it is common for people who had recovered from COVID to test positive up to three months afterward. *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/isolation.html ("If you

have recovered from your symptoms after testing positive for COVID-19, you may continue to test positive for three months or more without being contagious to others."). Accordingly, the fact that Mr. Smocks tested negative within 3 weeks of his alleged positive test, along with the other issues in the medical records, provide support that there was no COVID-19 positive test of Mr. Smocks, and therefore the three days from March 7 to March 9, 2021, should also not be excluded and further contribute to the Speedy Trial violation.

While this case has been pending. Mr. Smocks has obtained medical records from Grady County as well as documents from the District of Columbia Department of Corrections. Both these medical records are included as Exhibits A and B, respectively. Due to the medical nature of these records, including multiple medical diagnoses and records not relevant to the arguments in this pleading, they have been filed under seal, but are nevertheless incorporated herein for argument purposes.[2]

---

2 Undersigned counsel has spoken to Mr. Smocks and, for purposes of this argument, has authorized any and all discussion of his alleged COVID diagnoses to be discussed without the need to include those details under seal.

WHEREFORE, for the reasons and arguments made above, Defendant Troy Anthony Smocks prays that the court reconsider its ruling and either reopen the matter for a hearing, permit the filing of the additional exhibits (both in this pleading and in the Motion for Leave), and/or grant the Motion to Dismiss based on Speedy Trial Act violations.

Respectfully submitted,

TROY ANTHONY SMOCKS
By Counsel

____/s/ John L. Machado_____
John L. Machado, Esq.
Bar No. 449961
Counsel for Troy Anthony Smocks
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com

## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 12th day of July, 2021, which will send a notification of such filing (NEF) to the following to all counsel of record.


    /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Troy Anthony Smocks
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 1:21-cr-00198 (TSC) |
|  | : |  |
|  | : |  |
|  | : | 18 U.S.C. § 875(c) |
|  | : |  |
| v. | : |  |
|  | : |  |
| TROY ANTHONY SMOCKS, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

### STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Troy Anthony Smocks, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

#### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2.      On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

1



3.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael R. Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.      At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol;

however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### Defendant's Threatening Statements on Social Media

8.      The defendant travelled from Texas to the Washington, D.C., area, on January 5, 2021, and he returned to Texas on January 7, 2021.

9.      On the morning of January 6, 2021, while located in Washington, D.C., the defendant sent an electronic message on a social media service that reached tens of thousands of other social media users. The defendant's account on the social media service falsely purported to identify the defendant as a retired military officer. Electronic messages sent on the social media service travelled in interstate commerce. The defendant's message on the social media

service contained a threat to injure law enforcement officers. The message included the
following language:

> Today, January 6, 2021, we Patriots by the millions, have arrived in Washington,
> D.C., carrying banners of support for the greatest President the world has ever
> known.

> Bit [sic] if we must . . .

> Many of us will return on January 19, 2021, carrying Our weapons, in support of
> Our nation's resolve, towhich [sic] the world will never forget!!!

> We will come in numbers that no standing army or police agency can match.
> However, the police are NOT Our enemy, unless they choose to be!

> All who will not stand with the American Patriots . . . or who cannot stand with
> Us . . . then, that would be a good time for YOU to take a few vacation days.

> The American Patriot.

10.     On the evening of January 6, 2021, while located in Washington, D.C., the
defendant sent another electronic message on the social media service, which also travelled in
interstate commerce and was also viewed tens of thousands of times by social media users. The
message was sent at around 8:00 pm eastern time, after the U.S. Capitol Building was secured
from the earlier rioting. The message contained a threat to injure politicians and technology
company executives. The message included the following language:

> Today Eric Trump said that he would physically fight with the Patriots to save
> Our country. Today Representative Mo Brooks asked the Patriots to pledge Our
> live [sic] and wealth to fight for Our country. And today President Trump told of
> to "fight like hell". He said that Our cause was a matter of national security, and
> that these people behind the massive fraud must be arrested and brought to justice.
> And that task, falls on the shoulders of We The People . . . the American Patriots.

So over the next 24 hours, I would say, lets get our personal affairs in order. Prepare Our Weapons, and then go hunting. Lets hunt these cowards down like the Traitors that each of them are. This includes, RINOS, Dems, and Tech Execs. We now have the green light. [All] who resist Us, are enemies of Our Constitution, and must be treated as such.

Today, the cowards ran as We took the Capital. They have it back now, only because We left. It wasn't the building that We wanted . . . it was them!

11.     The defendant sent the electronic messages on the social media service for the purpose of issuing threats, and with knowledge that his communications would be viewed as threats.

12.     The defendant had an airline reservation to depart the United States for a foreign country on January 15, 2021, with a return flight scheduled for January 24, 2021, but the defendant cancelled the airline reservation the night before he was scheduled to depart. The defendant was arrested on the morning of January 15, 2021.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:     /s/ Michael J. Friedman
Michael J. Friedman
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Troy Anthony Smocks, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 13 Sept 2021

Troy Anthony Smocks
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/13/21

John Machado, Esq.
Attorney for Defendant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
vs. )   PRESENTENCE INVESTIGATION REPORT
)
)   Docket No.:   1:21CR00198-001
Troy Anthony Smocks )
)

**Prepared for:**    Tanya S. Chutkan
United States District Judge

**Prepared by:**    Aidee V. Gavito
United States Probation Officer
(202) 565-1351

**Assistant U.S. Attorney**
Michael Justin Friedman
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6765
michael.friedman@usdoj.gov

**Defense Counsel**
John L. Machado
503 D Street, NW, Suite 310
Washington, DC 20001
703-989-0840
johnlmachado@gmail.com

**Sentence Date:**    To be determined

**Offense:**    Counts 1 & 2: Threats in Interstate Communications
18 USC § 875(c)
5 years imprisonment/$250,000 fine

**Release Status:**    The defendant was arrested on January 15, 2021, in the Eastern District of Texas in Docket No. 4:21-mj-000333-KPJ. On January 21, 2021, he was committed to the District of Columbia.

**Detainers:**    None.

**Codefendants:**    None.

**Related Cases:**    None.



PETITIONER'S EXHIBIT 9

Date Prepared: September 7, 2021

Date Revised:

SMOCKS, Troy

Page 2

## Identifying Data:

| | | |
|---|---|---|
| **Date of Birth:** | March 20, 1962 | |
| **Age:** | 59 | |
| **Race:** | Black or African American | |
| **Hispanic Origin:** | Non-Hispanic origin | |
| **Sex:** | Male | |

| | |
|---|---|
| **SSN:** | 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 |
| **FBI:** | 569396W11 |
| **USM:** | 05582-041 |
| **State ID:** | Missouri State ID#: MO00528544 |
| | Minnesota State ID#: MN88001979 |
| | Texas State ID#: TX06504112 |

**PACTS#: 7341571**

| | |
|---|---|
| **Marital Status:** | Married |
| **Education:** | High School Diploma |
| **Dependents:** | 0[1] |
| **Citizenship:** | U.S. Citizen |
| **Country of Birth:** | United States |

| | |
|---|---|
| **Legal Address:** | District of Columbia Jail, 1901 D Street SE, Washington, D.C. |
| **Residence Address:** | No Fixed Address |
| **Telephone#:** | None |

| | |
|---|---|
| **Alias(es):** | (Per NCIC): Troy Smocks; Troy A. Smocks; T.A. Smocks; Kenneth D. Harris; Troy Perez; Vincent Shelton; Tony Sanders; Kenneth Harris; Mark Perez; John D. Perez; Troy A. Perez; Robert Perez |

| | |
|---|---|
| **Alternate IDs:** | Alias SSN: 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; 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 |
| | Alias DOBs: 09/20/1962; 09/02/1962; 03/02/1962; 01/27/1959 |
| | DCDC No.: 376-973 |
| | Drivers' License: TX04915537 |
| | Missouri Department of Corrections No.: 151232 |

---

**Restrictions on Use and Redisclosure of Presentence Investigation Report.** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

---

[1] Based on IRS Publication 501 definition for dependent(s) to include qualifying child or relative. All identified children, whether or not a dependent of the defendant, are included in Part C of this report.

SMOCKS, Troy

Page 4

8.  Travel records revealed that Defendant Smocks traveled via airplane from Texas to Washington, DC on January 5, 2021, and returned to Texas on January 7, 2021. On January 6, 2021, Defendant Smocks published a statement on his Parler account that was viewed by other Parler social media service at least 60,926 times which read as follows.

> Today, January 6, 2021, We Patriots by the millions have arrived in Washington, DC, carrying banners of support for the greatest President the World has ever known. But if we must...Many of us will return on January 19, 2021, carrying our weapons in support of Our nation's resolve, to which the world will never forget. We will come in numbers that no standing army or police agency can match. However, the police are NOT our enemy, unless they choose to be! All who will not stand with the American Patriots...or cannot stand with us, then, that would be a good time for you to take a few vacation days. -The American Patriot

9.  On January 7, 2021, Defendant Smocks published a statement to his Parler account that was viewed, copied, and pasted to other electronic communication sites at least 54,000 times, which read follows.

> So over the next 24 hours, I would say lets get our personal affairs in order. Prepare our weapons, and then go get 'em. Lets hunt these cowards down like the Traitors that each of them are. This includes RINOS, Dems, and Tech Execs. We now have the green light. [All] who resist US are enemies of Our Constitution, and must be treated as such. Today, the cowards ran as We took the Capital. They have it back now, only because We left. It wasn't the building that We wanted...it was them!

10. Officers also reviewed videos posed by Defendant Smocks to the social media platform YouTube in which he uses the alias "Colonel T Perez." In the videos, Defendant Smocks challenges military veterans to conduct armed protests and to taunt protesters who aren't willing to actually fire their weapons.

11. Officers discovered that Defendant Smocks had a flight reservation for the morning of January 15, 2020, to a foreign country.

12. From the information reviewed, it appears Defendant Smocks created a Parler account, created the aforementioned statements, and published them. Thereafter, the electronic communications were viewed at least 60,926 and 54,000 times, respectively. The defendant willingly and knowingly transmitted in interstate or foreign commerce communications which contain a threat to kidnap any person or a threat to injure the person of another.

## Victim Impact

13. There are no identifiable victims.

## Adjustment for Obstruction of Justice

14. The Probation Office has not received any information to suggest that the defendant willfully impeded or obstructed the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction.

SMOCKS, Troy

Page 3

# PART A. THE OFFENSE

## Charge(s) and Conviction(s)

1. On March 9, 2021, the United States Attorney in Washington, DC, filed a two-count Indictment charging Troy Anthony Smocks with Threats in Interstate Communications, in violation of 18 USC § 875(c) (Counts 1 and 2).

2. The Information does not provide notice to the defendant the Government intends to seek forfeiture as a part of the sentence. Rule 32.2(a) of the Fed. Rules of Crim Proc.

3. The criminal conduct charged in Counts 1 and 2 of the Indictment occurred on January 6 and 7, 2021.

4. On August 2, 2021, Troy Anthony Smocks appeared via video conference before United States District Judge Tanya S. Chutkan for a Status Conference in which the parties discussed the posture of the case. The case was referred to the United States Probation Office for the preparation of a Presentence Investigation.

## The Offense Conduct

5. According to the Criminal Complaint, a Detective with the Metropolitan Police Department assigned to the Joint Terrorism Task Force of the Federal Bureau of Investigation received information in which Troy Anthony Smocks, also known as, Kenneth Harris, Tony Sanders, Vincent Shelton, and Troy Perez, did knowingly and willfully transmitted in interstate or foreign commerce any communication containing any threat to injure the person of another.

6. Defendant Smocks is a resident of the State of Texas who has a social media account with Parler, LLC, (hereinafter referred to as Parler). Parler's headquarters are in the State of Nevada and it offers its account holders a platform electronic communication with each other via writing and publishing posts. A review of the Parler account holders revealed a substantial number of "right-wing" extremists and conspiracy theorists, whose publications include far "right-wing" content, anti-Semitic remarks, violent rhetoric, and Q-Anon conspiracies.

7. Officers located the Parler account, which was registered to Troy Anthony Smocks, which has a unique identification number. Records reflect that the unique identification number issued by Parler listed the account subscriber as Smocks. Agents verified the Parler account has the same telephone number and email address as Defendant Smocks. Additionally, the Internet Protocol address (IP address), a unique numerical label that identifies a device on the internet, corresponds to the defendant's residence in Texas. Furthermore, agents compared the photograph on the Parler account to the photograph on file with the Department of Motor Vehicles in Texas, which resulted in a positive match to the defendant. Smocks identified himself in his Parler account as "ColonelTPerez" or "@Colonel007."

Case 1:21-cr-00198-TSC   Document 55   Filed 10/04/21   Page 1 of 36

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA   )

                 )

        vs.        )   PRESENTENCE INVESTIGATION REPORT

                 )

                 )   Docket No.:   1:21CR00198-001

    Troy Anthony Smocks   )

                 )

| | |
|---|---|
| **Prepared for:** | Tanya S. Chutkan<br>United States District Judge |
| **Prepared by:** | Aidee V. Gavito<br>United States Probation Officer<br>(202) 565-1351<br>aidee_gavito@dcp.uscourts.gov |

**Assistant U.S. Attorney**
Michael Justin Friedman
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6765
michael.friedman@usdoj.gov

**Defense Counsel**
John L. Machado
503 D Street, NW, Suite 310
Washington, DC 20001
703-989-0840
johnlmachado@gmail.com

| | | |
|---|---|---|
| **Sentence Date:** | To Be Determined | |
| **Offense:** | Count 1: | Threats in Interstate Communications<br>18 USC § 875(c)<br>5 years imprisonment/$250,000 fine |
| **Release Status:** | | The defendant was arrested on January 15, 2021, in the Eastern District of Texas in Docket No. 4:21-mj-000333-KPJ. On January 21, 2021, he was committed to the District of Columbia. |
| **Detainers:** | None. | |
| **Codefendants:** | None. | |
| **Related Cases:** | None. | |

PETITIONER'S
EXHIBIT
10

**Date Prepared:** September 7, 2021

**Date Revised:** October 4, 2021

SMOCKS, Troy

Page 6

*So over the next 24 hours, I would say lets get our personal affairs in order. Prepare our weapons, and then go get 'em. Lets hunt these cowards down like the Traitors that each of them are. This includes RINOS, Dems, and Tech Execs. We now have the green light. [All] who resist US are enemies of Our Constitution, and must be treated as such. Today, the cowards ran as We took the Capital. They have it back now, only because We left. It wasn't the building that We wanted...it was them!*

10.  Officers also reviewed a video posted by Defendant Smocks to the social media platform YouTube in which he uses the alias "Colonel T Perez." In the video, Defendant Smocks challenges military veterans to conduct armed protests and to taunt protesters who aren't willing to actually fire their weapons.

11.  Officers discovered that Defendant Smocks had a flight reservation for the morning of January 15, 2020, to a foreign country.

12.  From the information reviewed, it appears Defendant Smocks created a Parler account, created the aforementioned statements, and published them. Thereafter, the electronic communications were viewed at least 60,926 and 54,000 times, respectively. The defendant willingly and knowingly transmitted in interstate or foreign commerce communications which contain a threat to kidnap any person or a threat to injure the person of another.

### Victim Impact

13.  This Title 18 offense involved generalized threats to injure or kidnap individuals. The defendant made statements about returning to Washington, DC on January 19, 2021, while armed. No information has been provided by the government relating to a request for restitution in this case.

### Adjustment for Obstruction of Justice

14.  The Probation Office has not received any information to suggest that the defendant willfully impeded or obstructed the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense of conviction.

### Adjustment for Acceptance of Responsibility

15.  On September 29, 2021, Mr. Smocks pled guilty to Count One of the Indictment. Additionally, the defendant's attorney has confirmed that his client accepts responsibility for the offense. Accordingly, a two-level reduction for acceptance of responsibility is applicable, pursuant to USSG § 3E1.1(a). Upon motion of the government, the defendant may be eligible for an additional one-level reduction, pursuant to USSG § 3E1.1(b).

### Offense Level Computation (2018 US Sentencing Guidelines)

16.  Count 1: Threats in Interstate Communications, 18 USC § 875(c)

17.  Deleted.

18.  Deleted.

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          .

            Plaintiff,             .    CR No. 21-0198 (TSC)

    v.                             .

TROY ANTHONY SMOCKS,               .    Washington, D.C.
                                   .    Thursday, October 21, 2021
            Defendant.             .    1:50 p.m.
.  .  .  .  .  .  .  .  .  .  .  .  .

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          MICHAEL J. FRIEDMAN, AUSA
                             U.S. Attorney's Office
                             555 Fourth Street NW
                             Washington, DC 20530
                             (202) 252-7566

For the Defendant:           JOHN L. MACHADO, ESQ.
                             Law Office of John Machado
                             503 D Street NW
                             Suite 310
                             Washington, DC 20001
                             (703) 989-0840

Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             U.S. Courthouse, Room 4704-A
                             333 Constitution Avenue NW
                             Washington, DC 20001
                             (202) 354-3186

Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.


PETITIONER'S
EXHIBIT

11